UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 08-cv-01243-WYD

VALERIE YBARRA,

      Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

      Defendant.
_____

**ORDER**
_____

THIS MATTER is before the Court on review of the Commissioner's decision that denied Plaintiff's applications for disability insurance benefits and supplemental security income pursuant to Titles II and XVI of the Social Security Act ["the Act"], 42 U.S.C. §§ 401-33 and 1380-83.  For the reasons stated below, this case is reversed and remanded for further factfinding.

I.    FACTUAL BACKGROUND

In April 2006, Plaintiff protectively filed applications for Title II Social Security Disability and Title XVI Social Security Income claiming that she became disabled on January 15, 2005, due to asthma, hepatitis C, lupus, diabetes, and carpal tunnel syndrome.  (Administrative Record ["R."] 68-79).  Plaintiff's claims were denied at the initial determination stage.  (*Id.* 36-39.)

A hearing was scheduled before an administrative law judge ["ALJ"] on October 30, 2007.  (R. 47.)  The hearing was rescheduled to allow Plaintiff to obtain counsel and

to submit updated records.  (*Id.* 22.)  The ALJ held a hearing on February 7, 2008, at

which time Plaintiff was still not represented by counsel.  (*Id.* 22, 20-33.)  In a decision

dated March 4, 2008, the ALJ found that Plaintiff was not disabled.  (*Id.* 8-18.)

Specifically, the ALJ found that Plaintiff was insured for Title II benefits through

June 30, 2008, and that she had not engaged in substantial gainful activity since the

alleged onset date of January 15, 2005.  (R. 13, Findings 1, 2).  He also found that

Plaintiff's asthma and fibromyalgia were "severe" impairments but that her impairments

did not meet or equal the Listings.  (*Id.*, Findings 3, 4).  The ALJ found that Plaintiff's

carpal tunnel syndrome, Hepatitis C, lupus, diabetes, and chronic fatigue syndrome

were not severe.  (*Id.* 13-14.)

The ALJ found that Plaintiff retained the residual functional capacity ["RFC"] to

perform a significant range of light exertional work, limited to avoiding concentrated

exposure to extreme environmental and other conditions.  (R. 15, Finding 5).  Finally, he

found that Plaintiff retained the ability to perform her past relevant work as a daycare

provider, interpreter, and preschool teacher.  (*Id.*, Finding 6).  The ALJ thus concluded

that Plaintiff was not disabled at step four of the evaluation.  (*Id.* 18, Finding 7.)

The Appeals Council declined review of the ALJ's decision.  (R. 4-6).  This

appeal followed.  The ALJ's decision became the final administrative decision, and this

case is ripe for judicial review pursuant to 42 U.S.C. § 405(g).

II.     ANALYSIS

A.     Standard of Review

A Court's review of the determination that a claimant is not disabled is limited to

determining whether the Commissioner applied the correct legal standard and whether

the decision is supported by substantial evidence. *Hamilton v. Sec. of Health and Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). "It requires more than a scintilla of evidence but less than a preponderance of the evidence." *Gossett v. Bowen*, 862 F.2d 802, 804 (10th Cir. 1988).

"Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). I find for the reasons discussed below that this case must be remanded to the Commissioner for further factfinding.

B.     Whether the ALJ's Decision is Supported by Substantial Evidence

Plaintiff argues that the ALJ had a heightened duty to fully develop the record since she was unrepresented by counsel at the hearing and that the ALJ failed in this duty because he did not obtain medical evidence which came to his attention at the hearing, including records from the 13 months preceding the hearing. Plaintiff also argues that the ALJ failed to dully develop the record through questioning at the hearing. She further contends that the ALJ erred by finding Plaintiff's hepatitis C infection to be non-severe at step two. Finally, Plaintiff asserts that the ALJ's decision to accord no weight to treating physician Dr. Welch's opinion is not supported by substantial evidence. I address these arguments below.

1.     <u>Whether the ALJ Erred in Failing to Fully Develop the Record</u>

The ALJ has a duty to fully and fairly develop the record as to material issues. *Baca v. Dept. of Health & Human Servs.*, 5 F.3d 476, 479-80 (10th Cir. 1993).  When the ALJ considers an issue that is apparent from the record, he has a duty of inquiry and factual development with respect to that issue.  *Grogan v. Barnhart*, 399 F.3d 1257, 1263-64 (10th Cir. 2005).  This includes the duty to develop the record by obtaining pertinent, available medical records which come to the ALJ's attention during the course of the hearing.  *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006).

An ALJ also must recontact the claimant's medical sources for additional information when the record evidence is inadequate to determine whether the claimant is disabled."  *Maes v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008).  The ALJ's duty to develop the record is heightened when a claimant appears before the ALJ without counsel.  *Madrid*, 447 F.3d at 790; *see also Carter v. Chater*, 73 F.3d 1019, 1021 (10th Cir. 1996) (the duty to develop the record "is especially strong in the case of an unrepresented claimant").

In this case, the record contained no medical records more recent than April 2006 from Peak Vista, the facility where Plaintiff's treating physician Dr. Welch worked. While the ALJ informed Plaintiff at the hearing that attempts had been made to obtain medical records on behalf of Plaintiff (R. 27), Plaintiff then advised the ALJ that the records were probably not located because they were in her maiden name, not the name "Ybarra."  (*Id.*)  Despite this, the ALJ did not attempt to locate the records from Dr. Welch or from Peak Vista in Plaintiff's maiden name, even though the Commissioner's

last attempt to locate Plaintiff's records was in the summer of 2006, over a year and a half before the hearing in 2008.

The Commissioner asserts, however, that Plaintiff told the ALJ he had the relevant records.  I find that this is not a basis to find the ALJ adequately developed the record, given the full record that was before the ALJ.  Plaintiff testified that the medical evidence the ALJ did not have records for was mainly limited to Peak Vista, Dr. Welch's office.  (R. 27.)  She further answered affirmatively to a comment from the ALJ stating that the Commissioner had those records.  (*Id.* at 28.)  However, she had previously advised the ALJ that she had been seeing her treating physician Dr. Welch pretty much regularly for the last three years, and that he was "keeping a close look on me and an eye on me."  (*Id.* 26.)  The record does not have any evidence from Peak Vista or Dr. Welch later than April 2006.  Thus, the issue of missing medical evidence  was apparent from the record, and the ALJ had duty of inquiry and factual development with respect to that issue

The Commissioner also argues that the ALJ's ordering of a consultative examination cures any failure to develop the record.  I disagree.  The ALJ made findings that were adverse to Plaintiff based on the fact that there was no medical evidence to support Plaintiff's allegations.  Specifically, he rejected the opinions of Dr. Welch in part on the basis that "his treatment of the claimant during the relevant period of time has been limited to only one visit in 2006 with Dr. Welch noting an absence of treatment between December 2004 and April 24, 2006."  (R. 17.)  Thus, he used the fact that Plaintiff did not have updated medical records against her and to bolster his findings that Plaintiff was not disabled.  I find that this is error that requires remand.

This is similar to the situation addressed in *Madrid*. In that case the ALJ was aware that the claimant was referred for a rheumatology work-up and that testing was performed. *Madrid*, 488 F.3d at 791. The ALJ did not request these records and then dismissed the possibility of a rheumatological disorder because 'the record ... [contained] no evidence of results of a rheumatology work-up." *Id*. The Tenth Circuit held that the ALJ committed legal error by not requesting the test results, particularly since the claimant was not represented by counsel at the administrative hearing. *Id*.

Similarly, in another case an unrepresented claimant presented an evaluation from a doctor diagnosing her with depression. *Carter*, 73 F.3d at 1021. The ALJ acknowledged in his decision that the claimant had alleged depression as a disabling psychiatric condition but rejected the doctor's diagnosis because it was not supported by any testing or a clinical interview. *Id*. at 1022. The Tenth Circuit held that the existence of the diagnosis required the ALJ to develop the record concerning depression. Further, the claimant mentioned she had seen another psychiatrist. The Tenth Circuit remanded for further development of the record concerning Plaintiff's claims of depression when the ALJ made no effort to obtain these records. *Id*.

Based on the foregoing authority, I find that the ALJ erred in failing to develop the record and a remand is required so that the record can be fully developed. Also on remand, the ALJ shall conduct more thorough questioning of the Plaintiff. The Tenth Circuit has stated that the ALJ should ask "sufficient questions to ascertain (1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities." *Musgrave*, 966 F.2d at 1374-75. From my review of the

hearing transcript I agree with Plaintiff that the ALJ did not fully develop these issues in the hearing.  Further, the ALJ should ascertain that Plaintiff understood her right to representation, as it is unclear from the record whether she understood this right.  *See id.* at 1375.  (R. 22.)

2.   <u>Whether the ALJ Erred at Step Two</u>

I also find that the ALJ erred at step two, which further supports my finding that the case should be remanded.  At step two the ALJ found that Plaintiff's carpal tunnel syndrome, Hepatitis C, lupus, diabetes, and chronic fatigue syndrome were not severe impairments.  Plaintiff challenges this finding as to her Hepatitis C.

Case law prescribes a very limited role for step two analysis."  *Lee v. Barnhart*, No. 03-7025, 2004 WL 2810224, at *2 (10th Cir. Dec. 8, 2004).[1]  "While 'the mere presence of a condition or ailment' is not enough to get the claimant past step two, *Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.1997), a claimant need only make a 'de minimus' showing of impairment to move on to further steps in the analysis."  *Id.* (quoting *Langley v. Barnhart*, 373 F.3d 1116, 1123 (10th Cir. 2004)).  Indeed, Social Security Ruling 85-28 cautions:

> Great care should be exercised in applying the not severe impairment concept. If an adjudicator is unable to determine clearly the effect of an impairment or combination of impairments on the individual's ability to do basic work activities, the sequential evaluation process should not end with the not severe evaluation step. Rather it should be continued.

*Id.*, 1985 WL 56856, at *4 (1985).

---

[1]  Citations to this and other unpublished opinions in this Order are made because I find that the opinions have persuasive value with respect to a material issue that has not been addressed in a published opinion.

In the case at hand, the medical evidence in the record shows that Plaintiff presented with numerous symptoms, including arthralgias and fatigue. (R. 158-65). As Plaintiff notes, chronic fatigue has been noted to be a major manifestation of long-term hepatitis C infection. *See* Kelley's Textbook of Internal Medicine, 976 (H. David Humes ed., Lippincott Williams & Wilkins) (4th ed. 2000). Additionally, those infected may display myalgias and arthralgias. *Id.* There is evidence in the record to support this, as Plaintiff's treating physician Dr. Welch completed a form just prior to the hearing in January 2008 in which he indicated that the myalgias and arthralgias were secondary to Ybarra's hepatitis C. ( R. 266). The ALJ did not properly consider the extent to which these symptoms could impact Plaintiff's ability to work.

Further, while there were indications in December 2004 that Plaintiff's Hepatitis C disease was "mild" (R. 162), as the Commissioner notes, the reports also state that Plaintiff was probably very early in her genesis of hepatitis C disease process. (R. 266.) Dr. Pinto from Peak Vista stated that while "[Ybarra's] hepatitis C is very mild. . . her liver disease could worsen over time." (*Id.* 163.)

I agree with Plaintiff that there is evidence in the record from Plaintiff's treating physician which could reasonably be construed to mean that Plaintiff's condition did indeed worsen over time. Dr. Welch reported in his notes from April 2006 that "arthralgias, hepatitis C and depression" resulted in disability for six to eight months. (*Id.* 155). Further, in December 2008 Dr. Welch completed a form stating that he examined Plaintiff on January 29, 2008 and determined that Plaintiff was disabled for twelve months or longer. (*Id.* 266.) He also stated that Plaintiff's prognosis is poor with regard to her hepatitis C and fatigue. (*Id.*) These issues were not adequately

-8-

developed by the ALJ.  First, as noted above, the ALJ did not develop the record to

obtain more recent medical evidence from Dr. Welch.  Second, if the reasons given by

Dr Welch were not clear as to why he found the hepatitis C to be disabling,  the ALJ

should have contacted Dr. Welch to develop the record regarding this issue.  *McGoffin*

*v. Barnhart*, 288 F.3d 1248, 1252  (10th Cir. 2002).  Also, for the reasons stated in the

next section, I find that the ALJ did not adequately weigh Dr. Welch's opinions.

Based on the above evidence, I agree with Plaintiff that the ALJ failed to apply

the requirements of the de minimus test stated above and failed to properly evaluate the

severity of Plaintiff's impairments.  As a result, reversal and remand are proper

remedies.  *Reyes v. Bowen*, 845 F.2d 242, 244 (10th Cir. 1988)

I also note that at step two the ALJ considered Plaintiff's impairments individually

to determine whether they were severe enough to limit her ability to do work activities.

This was error.  On remand, the step two analysis "must consider the combined effect of

all of [the claimant's] impairments without regard to whether any such impairment, if

considered separately, would be of sufficient severity [to survive step two].'"  *Carpenter*

*v. Chater*, 537 F.3d 1264, 1266 (10th Cir. 2008) (quotation omitted).

The Commissioner argues, however, that by finding the hepatitis C impairment

not severe at step two, the ALJ committed, at most, harmless error because he

considered Plaintiff's alleged symptoms of hepatitis C at step four.  He asserts that

Plaintiff's symptoms from fibromyalgia and asthma, the impairments the ALJ found to be

severe, encompass all her alleged symptoms from hepatitis C (including body aches

and fatigue).  I reject this argument, as the record was not adequately developed.  The

development of the record could clearly impact the findings at step two and onwards.

Further, I am not convinced the ALJ did an adequate assessment of Plaintiff's fatigue or pain even as to Plaintiff's fibromyalgia. Fibromyalgia "is a chronic condition, causing 'long-term but variable levels of muscle and joint pain, stiffness and fatigue.'" *Moore v. Barnhart*, No. 03-3243, 2004 WL 2634571, at *8 (10th Cir. Nov. 19, 2004). It was error for the ALJ to completely discredit Plaintiff's complaints of pain and fatigue given his finding that her fibromyalgia was a severe impairment. The ALJ relied on the fact that Plaintiff received minimal treatment. The record was not fully developed, however, on this issue. Further, the medical records that did exist regarding treatment substantiate that Plaintiff had pain and fatigue. *See Romero v. Astrue*, 242 Fed. Appx. 536 (10th Cir. 2007) ("Dr. Haddock's conclusions concerning Ms. Romero's pain and limitation. . . find support in the treatment records and therefore could not be cursorily dismissed for the reason the ALJ gave: lack of medical evidence). The ALJ also improperly relied on the fact that objective examinations were normal, since fibromyalgia is not diagnosed that way. *Moore*, 2004 WL 2634571, at *8-9. On remand, the ALJ must take into account these considerations and do a proper analysis of Plaintiff's pain and fatigue.

Finally, "[i]f the ALJ finds that plaintiff's pain, by itself, is not disabling, that is not the end of the inquiry." *Harrison v. Shalala*, No. 93-5238, 1994 WL 266742, at *5 (10th Cir. 1994). "The [Commissioner] must show that 'jobs exist in the national economy that the claimant may perform *given the level of pain [she] suffers*.'" *Id.* (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490-91 (10th Cir. 1993) (further quotations omitted). "A vocational expert is ordinarily required to determine what limitation . . . pain might

impose on [Plaintiff's] ability to do  . . . work."  *Id.*  These issues must also be taken into account on remand.

> 3.   Whether the ALJ Erred in His Decision Regarding the Opinions of Plaintiff's Treating Physician

"A treating physician's opinion must be given substantial weight unless good cause is shown to disregard it."  *Goatcher v. United States Department of Health and Human Servs.*, 52 F.3d 288, 289-90 (10th Cir. 1994) (citing *Frey v. Bowen*, 816 F.2d 508, 513 (10th Cir.1987)).  "When a treating physician's opinion is inconsistent with other medical evidence, the ALJ's task is to examine the other physicians' reports "to see if [they] 'outweigh[ ]' the treating physician's report, not the other way around."  *Id.* at 290 (quotation omitted).  "The ALJ must give specific, legitimate reasons for disregarding the treating physician's opinion that a claimant is disabled."  *Id.*  Further, an ALJ is not entitled to reject a doctor's opinions without adequate justification or to substitute his own medical judgment for that of mental health professionals.  *Winfrey v. Chater*, 92 F.3d 1017, 1021-22 (10th Cir. 1996).

I find that the ALJ did not properly weigh Dr. Welch's opinions and that his reasons for rejecting the opinions of Dr. Welch are not supported by substantial evidence.  First, I already found in the previous section that the ALJ erred in disregarding Dr. Welch's opinion because "his treatment of the claimant during the relevant period of time has been limited to only one visit in 2006 with Dr. Welch noting an absence of treatment between December 2004 and April 24, 2006." (R. 17.)  As noted in connection with the analysis of the ALJ's duty to defend, the ALJ conducted no development of the record with regard to Dr. Welch and his office (Peak Vista), despite

notice that records may be missing.  Accordingly, this was not a proper basis to discount Dr. Welch's opinions.

Second, the ALJ stated that "Dr. Welch's opinion is not entitled to controlling weight".  (R. 17.)  However, this does not specify what actual weight was given to Dr. Welch's opinions in the Med-9 forms he filled out or to his medical findings in his records.  It appears that he gave the opinions and findings no weight, but this is unclear from the record.  This is error, as "'an ALJ must give good reasons . . . for the weight assigned to a [medical providers'] opinion,' that are 'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight.'"  *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quotation omitted).  Further, he did not state or consider what lesser weight should be assigned to Dr. Welch's opinions, which was also error. *Id.* at 1083.

As to other specific reasons the ALJ gave for rejecting Dr. Welch's opinions, he stated that "[h]is claims are not supported by objective findings, and even parts of his diagnoses are unsupported, with there being no evidence of a diagnosed thought disorder." (R. 17.)  Again, I find error with this finding.  Numerous objective findings in the record exist in the records of Peak Vista, the clinic where Dr. Welch worked and where Plaintiff was treated.  (*Id.* 158-70).  The ALJ must view Dr. Welch's findings in context of the findings made by all the providers at the Peak Vista clinic where she was being treated.  Further, the record was not adequately developed as to Dr. Welch's evidence.  As such, the ALJ was not entitled to assume from the Med-9 forms that Dr. Welch's diagnoses were not supported by objective findings, *i.e.*, "'observed signs or

on psychological tests.'" *Thomas v. Barnhart*, 147 Fed. Appx. 755, 759, 2005 WL 2114163 (10th Cir. 2005).

The same is true as to the ALJ's findings that Dr. Welch's opinions on the Med-9 forms must have been based on Plaintiff's subjective complaints and were thus entitled to no weight.  (R. 17.)  Without an adequate development of the record, this finding was mere speculation.  *Langley*, 373 F.3d at 1121 ("The Tenth Circuit is clear that "'[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation, or lay opinion*'") (emphasis in original) (quoting *McGoffin*, 288 F.3d at 1252).

I also find that the ALJ's finding that there was no evidence of a diagnosed thought disorder is an improper medical judgment.  The progress notes from Peak Vista document ongoing depression.  (*Id.*)  An indication that depression is "stable" (R. 162, 167) does not necessarily mean that there are no limitations related to same.  *See Robinson*, 366 F.3d at 1083 ("doctor's statement in records that claimant was stable on medication when he was also reporting that claimant was unable to work as a result of her mental illness "may have simply meant that she was not suicidal" and speculative conclusion by the ALJ with regard to same was improper).

Consistent with the medical records, Dr. Welch diagnosed  a diagnosis of depression in the form dated April 26, 2006.  (R. 262.)  Later, his diagnosis developed into depression and a thought disorder, with a finding that Plaintiff's thought disorder and arthralgias needed to be controlled in order for her to work.  (*Id.* 264.)  In the most

recent evidence submitted to the ALJ, the diagnosis evolved into bipolar disorder.  (*Id.* 266.)  Dr. Welch was Plaintiff's medical provider and obviously had insight into Plaintiff's mental health condition.  It was error for the ALJ to assume that the thought disorder was not supported without developing the record as to how Dr. Welch arrived at that conclusion.  Where the ALJ has questions about the treating physician's opinion or the medical evidence from him is inadequate, as here, to determine whether a disability exists, the ALJ is required to contact the treating physician.  *McGoffin*, 288 F.3d at 1252.  The ALJ erred in not doing so here.

A similar issue was addressed in *Maes v. Astrue*, 522 F.3d 1093 (10th Cir. 2008).  In that case, the record showed that Plaintiff was prescribed medication used to treat depression prior to her date last insured, but the record did not contain evidence demonstrating that the claimant was diagnosed with or treated for depression or another mental condition.  *Id.* at 1098.  Based on this lack of evidence, the ALJ determined that the claimant was not disabled.  The Tenth Circuit held that the evidence was "an inadequate basis for a determination-one way or the other- as to Ms. Maes's alleged disability."  *Id.*  "The medication could have been prescribed because Ms. Maes was suffering from a severe mental impairment, or it could have been prescribed for a mild condition."  *Id.*  Thus, the ALJ was required "to seek additional records that may clarify the extent of the disability."  *Id.*  "Without that clarification, we cannot say that the ALJ's determination was supported by substantial evidence."  *Id.*  The Tenth Circuit thus remanded with instructions to seek additional evidence or clarification regarding the claimant's mental impairments.  *Id.*

Applying the above rationale to this case, while there was a diagnosis in the record of psychological and other impairments, the record was inadequate to determine how these impairments were diagnosed and whether the thought disorder or other mental health diagnoses were adequately supported.  The ALJ was thus required to contact Dr. Welch to clarify these issues.  The ALJ was then required to assess whether these impairments were severe and how they impacted Plaintiff's RFC.  These issues must be adequately addressed on remand.

The ALJ also rejected Dr. Welch's opinions because the Med-9 forms he completed were for the state's Aid to the Needy and Disabled ["AND"] program which has a different standard for disability than Social Security disability.  (R. 17.)  Further, he found that disability is an issue reserved for the Commissioner.  (*Id.*)  While I agree that the standard for determining disability differs between the Social Security Act and Colorado's AND program and that the issue of disability is ultimately reserved for the Commissioner, that does not mean that a treating physician's opinions and findings can simply be rejected on this basis.  "[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored."  *Miller v. Barnhart*, No. 01-2231, 2002 WL 1608452, at *3 (10th Cir. July 22, 2002).  "The adjudicator is required to evaluate all evidence in the record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner."  *Id.*

IV.   CONCLUSION

Based upon the errors described above, it is

ORDERED that this case is **REVERSED AND REMANDED** to the Commissioner

for further factfinding and a rehearing pursuant to sentence four in 42 U.S.C. § 405(g).

Dated September 30, 2009

BY THE COURT:


s/ Wiley Y. Daniel
Wiley Y. Daniel
Chief United States District Judge